Hmg JLW/JMM USAO# 2023R00361

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- BALTIMORE
'26 OCT 8 PM4:53

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** MJM-26-358 |
| | * | |
| **KARA DIPIETRO,** | * | **(Bank Fraud, 18 U.S.C. § 1344;** |
| | * | **Forfeiture 18 U.S.C. § 982(a)(2)(A))** |
| **Defendant.** | * | |
| | * | |
| | * | |
| | ******* | |

# INDICTMENT

## COUNTS ONE THROUGH SIX
**(Bank Fraud)**

The Grand Jury for the District of Maryland charges that:

At times relevant to this Indictment:

1. Defendant **KARA DIPIETRO** ("**DIPIETRO**") was a resident of Baltimore County, Maryland.

Entities Associated With **DIPIETRO**

2. **DIPIETRO** was the President and CEO of multiple Maryland companies, including H.M.C., Inc. ("HMC"), Holdings Management Company Inc. ("Holdings"), and Kinetic Capital LLC ("Kinetic").

3. In or about 2015, **DIPIETRO** purchased HMC from **DIPIETRO's** relative.

4. From in or about 2015 until in or about 2020, HMC offered millwork and constructions service and had multiple employees.

5. On or about November 1, 2018, **DIPIETRO** filed articles of incorporation creating Kinetic.

6. On or about December 4, 2019, **DIPIETRO** filed articles of incorporation creating Holdings. **DIPIETRO** also filed paperwork for Holdings to use "HMC" as a trade name.

7. Between in or about 2020 and in or about 2021, Holdings assumed HMC's employees and business operations and HMC ceased operating as a business.

8. HMC and Holdings controlled a business location at 7190 Oakland Mills Road, Suite 10, Columbia, Maryland.

9. HMC was assigned and used the internet protocol ("IP") address 173.10.189.241 ("HMC IP"), with a listed address of 7190 Oakland Mills Road, Columbia, Maryland.

10. **DIPIETRO**'s personal residence was assigned and used the IP address 71.179.172.29 ("**DIPIETRO**'s Home IP").

11. **DIPIETRO** used a personal cell phone number ending in 1523 ("1523 Cell")

12. HMC used an office phone number ending in 0729 ("HMC Phone").

13. **DIPIETRO** was assigned a nine-digit social security number ("K.D. SSN")

Employer Identification Numbers

14. An Employer Identification Number ("EIN") is a federal tax identification number assigned to businesses and other entities. Following an application, the Internal Revenue Service ("IRS") assigned a particular business a unique EIN. Any particular corporate entity was assigned only one EIN at a time, and any particular EIN was assigned to only one corporate entity at a time.

15. The EIN 52-2005467 was assigned to HMC.

16. The EIN 84-3773828 was assigned to Holdings.

17. The EIN 83-2424221 was assigned to Kinetic.

18. The IRS had not assigned the EINs 84-3777828 and 54-2005467 to any business entity controlled or associated with **DIPIETRO**.

The Paycheck Protection Program

19. First Home Bank ("FHB"), Sandy Spring Bank ("Sandy Spring"), and Customers Bank ("CB") were financial institutions as defined in 18 U.S.C. § 20, and had their deposits insured by the Federal Deposit Insurance Corporation ("FDIC").

20. Greater Nevada Credit Union ("GNCU") was a financial institution as defined in 18 U.S.C. § 20, and had its deposits insured by the National Credit Union Share Insurance Fund.

21. The United States Small Business Administration ("SBA") was a federal government agency that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by supporting the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

22. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the SBA that provided forgivable loans to small businesses for job retention and certain other expenses. Pursuant to the PPP, participating third-party lenders approved and disbursed SBA-backed PPP loans to cover, among other things, payroll, utilities, rent/mortgage, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

23. To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation prior to February 15, 2020, and paid employees salaries and payroll taxes or paid independent contractors. The authorized representative was also required to disclose any other businesses they owned or controlled.

24. An entity applying for PPP benefits had to state its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of PPP money the small business could receive. The business was required to provide documentation supporting its claimed payroll expenses, such as federal income tax documents.

25. Eligible business entities with an EIN were able to obtain two PPP loans: a First Draw loan and a Second Draw loan.

26. In the First Draw PPP loan application, the business' authorized representative was required to certify that, during the relevant application window, "the Applicant has not and will not receive another loan under the Paycheck Protection Program."

27. In the Second Draw PPP loan application, the business' authorized representative was required to certify that the "Applicant has not and will not receive another Second Draw Paycheck Protection Loan."

28. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located outside Maryland. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account provided by the business' authorized representative during the application process.

29. PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, rent for the business premises, interest on mortgages on the business premises, utilities for the business, and worker protection costs related to COVID-19.

30. GNCU, FHB, Sandy Spring, and CB were third-party participating lenders in the PPP program.

**The Scheme to Defraud**

31. Beginning in and about April 2020 and continuing through in and about May 2021, in the District of Maryland and elsewhere, the defendant,

**KARA DIPIETRO,**

knowingly devised and intended to devise a scheme and artifice to defraud financial institutions, including GNCU, Sandy Spring, FHB, and CB, and to obtain money and property owned by or under the custody and control of those financial institutions, by means of materially false and fraudulent pretenses, representations, and promises.

**The Object of the Scheme to Defraud**

32. The object of the scheme to defraud was for **DIPIETRO** to obtain PPP loan benefits for her financial gain.

**Manner and Means of the Scheme to Defraud**

It was part of the scheme to defraud that:

33. **DIPIETRO** submitted, and caused to be submitted, PPP loan applications that contained false statements, misrepresentations, and omissions related to multiple businesses, including false information about the applying business entity's operations, payroll expenses, and number of employees.

34. **DIPIETRO** submitted, and caused to be submitted, more than twenty PPP loan applications on behalf of HMC, Holdings, Kinetic, and similarly spelled entities.

35. **DIPIETRO** submitted, and caused to be submitted, PPP loan applications that listed false and fraudulent EINs not assigned by the IRS to the applying entity.

36. **DIPIETRO** caused the use of the HMC IP in connection with PPP applications for HMC, Holdings, Kinetic, and similarly spelled entities.

37. **DIPIETRO** caused the use of **DIPIETRO**'s Home IP for multiple PPP applications.

38. During 2020 and 2021, **DIPIETRO** caused the submission of PPP loan applications, seeking more than $7.5 million, and obtaining more than $2.5 million, as reflected below:

| Approx. Date | Applying Entity | EIN or Tax ID Used | Electronic Signer | Phone Listed | Listed Email | Approx. Amount Requested | Approx. Amount Funded |
|---|---|---|---|---|---|---|---|
| 04/08/20 | Kinetic Capital LLC | 84-3777828 | Kara DiPietro | 410-[incomplete] | k.dipietro@hmcincorporated.com | $ 57,940 | — |
| 04/08/20 | Kinetic Capital | 84-3777828 | Kara DiPietro | 410-[incomplete] | k.dipietro@hmcincorporated.com | $ 57,940 | — |
| 04/22/20 | HMC, Inc. | 52-2005467 | Kara DiPietro | HMC Phone | k.dipietro@hmcincorporated.com | $ 429,004 | — |
| 05/02/20 | Holdings | 84-3777828 | Kara Anne Dipietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 664,331 | $ 664,331 |
| 05/04/20 | HMC, Inc. | 84-3773828 | Kara DiPietro | HMC Phone | k.dipietro@hmcincorporated.com | $ 429,004 | $ 429,004 |
| 05/04/20 | Kinetic Capital LLC | 83-2424221 | Kara DiPietro | None listed | kara@kineticcapitalllc.com | $ 20,130 | $ 20,130 |
| 05/14/20 | HMC Inc. | 52-2005467 | Kara DiPietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 433,000 | — |
| 06/04/20 | HMC | 52-2005467 | Kara Anne Dipietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 433,000 | $ 433,000 |
| 01/13/21 | Holdings | 84-3773828 | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 436,600 | — |
| 01/15/21 | H.M.C., Inc. | 52-2005467 | Kara DiPietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 466,772 | — |
| 01/15/21 | H.M.C., Inc. | 52-2005467 | Kara DiPietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 466,773 | — |
| 02/04/21 | HMC Inc | 84-3773828 | Kara DiPietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 429,004 | $ 429,004 |
| 02/07/21 | Holdings | 84-3773828 | Kara DiPietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 423,890 | — |
| 02/10/21 | HMC | 52-2005467 | Kara DiPietro | 1523 Cell | k.dipietro@hmcincorporated.com | $ 466,772 | $ 466,772 |
| 02/16/21 | Kinetic Capital LLC | 83-2424221 | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 20,130 | $ 20,130 |
| 03/03/21 | HMC Incorporated | 54-2005467 | Kara DiPietro | 1523 Cell | karahmckccf@gmail.com | $ 327,395 | $ 327,395 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 03/13/21 | HMC | K.D. SSN | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 471,445 | — |
| 03/16/21 | HMC Inc | K.D. SSN | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 386,158 | — |
| 03/17/21 | HMC Inc | K.D. SSN | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 437,925 | — |
| 03/17/21 | Holdings | 84-3773828 | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 371,365 | — |
| 03/23/21 | Holdings | 84-3773828 | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 416,233 | — |
| 03/31/21 | H.M.C., Inc. | 52-2005467 | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 426,358 | — |
| 04/08/21 | HMC | K.D. SSN | Kara DiPietro | 1523 Cell | karahmckccf@gmail.com | $ 426,358 | — |
| 04/08/21 | H.M.C., Inc. | 52-2005467 | Kara DiPietro | 1523 Cell | k.dipietro@hmcoinc.com | $ 426,358 | — |

39. **DIPIETRO** caused the submission of PPP loan applications that did not disclose prior PPP loan applications associated with (a) **DIPIETRO**; (b) the applying entity; and/or (c) other entities owned, controlled, created, and/or used by **DIPIETRO.**

40. In or about April 2020, **DIPIETRO** caused Kinetic to apply for multiple PPP loans using the EIN number 84-3777828, which was not assigned to Kinetic.

41. In or about February 2021, **DIPIETRO** caused the submission of a false and fraudulent PPP loan application for Kinetic, which provided false information about Kinetic's employees, payroll expenses, and business operations.

42. **DIPIETRO** submitted, and caused to be submitted, false and fraudulent tax information and documents in support of PPP loan applications.

43. **DIPIETRO** caused the submission of PPP loan applications that contained false certifications that the applicant business had not already received a First Draw PPP loan.

44. **DIPIETRO** caused the submission of PPP loan applications that contained false certifications that the applicant business had not already received a Second Draw PPP loan.

45. **DIPIETRO** attested that the information presented in PPP loan applications was true and accurate when **DIPIETRO** then and there knew that was false.

46. **DIPIETRO** caused the use of the following email addresses on PPP applications: k.dipietro@hmcincorporated.com, k.dipietro@hmcoinc.com, karahmckccf@gmail.com, and kara@kineticcapitalllc.com.

47. **DIPIETRO** controlled and was the authorized signatory on the following bank accounts: a Sandy Spring account ending 5801 ("SS 5801"), a Sandy Spring account ending in 4301 ("SS 4301"), a Bank of America account ending in 3171 ("BOA 3171"), and a Bank of America account ending 8374 ("BOA 8374").

48. **DIPIETRO** received, obtained, used, and controlled PPP loan proceeds that were deposited into SS 5801, SS 4301, BOA 3171, and BOA 8374.

**49.** **DIPIETRO** caused PPP loan proceeds to be transferred and used for expenses not permissible under the PPP, including renovations to **DIPIETRO**'s personal residence.

## THE CHARGES

50. On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**KARA DIPIETRO,**

knowingly and willfully executed and attempted to execute the scheme and artifice to defraud financial institutions, namely GNCU, Sandy Spring, FHB, and CB, and to obtain money, funds, credits, assets, securities, and other property under the custody and control of the financial institutions by means of materially false and fraudulent pretenses, representations, and promises, as described below:

| COUNT | DATE | DESCRIPTION | AMOUNT OBTAINED |
|---|---|---|---|
| 1 | May 2, 2020 | **DIPIETRO** submitted and caused the submission of a PPP application to GNCU for Holdings that listed an EIN not assigned to Holdings, falsely listed Holdings' average monthly payroll, and relied upon a 2019 IRS Form 940 that was submitted to the IRS by a different entity, HMC. | $664,331 |
| 2 | May 4, 2020 | **DIPIETRO** submitted and caused the submission of a PPP application to Sandy Spring for "HMC, Inc." that listed an EIN assigned to Holdings, and falsely certified that "[d]uring the period beginning on February 15, 2020, and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." | $429,004 |
| 3 | June 4, 2020 | **DIPIETRO** submitted and caused the submission of a PPP application to FHB for HMC that falsely certified that "[d]uring the period beginning on February 15, 2020, and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." | $433,000 |
| 4 | February 4, 2021 | **DIPIETRO** submitted and caused the submission of a PPP application to Sandy Spring on behalf of "HMC, Inc." that falsely listed an EIN assigned to Holdings, and falsely certified that "[t]he Applicant has not and will not receive another Second Draw Paycheck Protection Loan." | $429,004 |
| 5 | February 10, 2021 | **DIPIETRO** submitted and caused the submission of a PPP application to FHB for HMC that falsely certified that "[t]he Applicant has not and will not receive another Second Draw Paycheck Protection Loan." | $466,772 |
| 6 | March 3, 2021 | **DIPIETRO** submitted and caused the submission of a PPP application to CB for "HMC, Incorporated" that fraudulently listed an EIN not assigned to that business and falsely certified that "[t]he Applicant has not and will not receive another loan under the Paycheck Protection Program." | $327,395 |

18 U.S.C. § 1344
18 U.S.C. § 2

**FORFEITURE ALLEGATION**

The Grand Jury for the District of Maryland further charges that:

1. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 982(a)(2)(A) and 21 U.S.C. § 853(p), in the event of the defendant's conviction of the offense alleged in Counts One through Six of this Indictment.

2. Upon conviction of the offense alleged in Counts One through Six, the defendant,

**KARA DIPIETRO**

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A) any property, real or personal, which constitutes or is derived from proceeds the defendant obtained, directly or indirectly, as a result of the scheme to defraud.

**Substitute Assets**

3. If, as a result of any act or omission by the Defendant, any of the property described above as being subject to forfeiture:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third person;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been comingled with other property which cannot be divided without difficulty,

the United States, pursuant to 21 U.S.C. § 853(p) and 28 U.S.C. § 2461(c), shall be entitled to forfeiture of substitute property up to the value of the forfeitable property described above.

18 U.S.C. § 982(a)(2)(A)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

KELLY O. HAYES
UNITED STATES ATTORNEY

SIGNATURE REDACTED

Foreperson
Date: 10/08/2026